```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
                      HOUSTON DIVISION


APRIL DUPREE ADESHILE,          §
                                §
      Plaintiff,                §
                                §
v.                              §   CIVIL ACTION NO. H-06-3480
                                §
METROPOLITAN TRANSIT AUTHORITY  §
OF HARRIS COUNTY, TEXAS,        §
                                §
      Defendant.                §
```

MEMORANDUM AND ORDER

Pending is Defendant Metropolitan Transit Authority of Harris County, Texas's Motion for Summary Judgment (Document No. 15). After carefully considering the motion, response, reply, and the applicable law, the Court concludes that the motion should be granted for the reasons that follow.

I. Background

Plaintiff April Dupree Adeshile ("Plaintiff"), who is and has been at all relevant times a bus driver for Defendant Metropolitan Transit Authority of Harris County, Texas ("METRO"), brings this suit under Title VII, 42 U.S.C. § 2000e, *et seq.*, alleging she was sexually harassed by several co-workers--five females and one male--in several incidents during her years of employment that began in 2002. The first of the alleged incidents occurred shortly after Plaintiff was hired in 2002, when Plaintiff attended an

eight-weeks training session at METRO, along with Cynthia Green and two male recruits.  Several weeks into the session, on about three occasions, Green purportedly openly described her sexual proclivities with other women, and in graphic detail.[1]  Document No. 15, Plaintiff's Deposition 46:7-48:3.  Plaintiff complained to Mr. Obina, her training supervisor, that Green had been looking at her and making "gestures with her mouth," was "talking about all kinds of [ill]icit behavior" she engaged in with her partners, and was "harass[ing]" her.  Id. 48:7-13.  He allegedly advised Plaintiff to "ignore it," explaining, "You need to be here for a while before you make any kind of complaints like that."  Id. 49:10-17.

In January, 2005, Jessie Hall, a female contract security guard at one of the METRO garages purportedly began asking Plaintiff about her sexual preferences and suggested that Plaintiff was a lesbian, which Plaintiff denied.  Document No. 1 ¶ 10. Plaintiff wrote a letter to Pete Lapuyade, the superintendent of the Polk Street garage where Plaintiff was then assigned, complaining of Hall's conduct.  Within a few days, Lapuyade informed Plaintiff that METRO had "t[aken] care of the problem,"

---

[1] The statements included Green's expression of dislike for women that "smell[ed] like fish," and her preference for placing "fruit" and "whipped cream" between their legs where she would "eat and eat and eat a while" so that her partner would "know that it's good because she'll be wobbling as if she was drunk."  Document No. 15, Plaintiff's Deposition 46:20-47:7.

removed Hall from the premises, and barred her from working at any METRO facility.  Document No. 15, Plaintiff's Deposition 51:13-52:11.

Plaintiff also contends that three female Street Service Supervisors, Claudia Jackson, Shirley Mitchell, and Melanie LaFleur, stared at her at various times between 2002 and 2006.[2] Street Service Supervisors, officially known as "Service Safety Supervisors," oversee bus operators such as Plaintiff, ensuring that they adhere to prescribed bus routes, maintain on-time performance, and follow METRO policies and procedures.  Id. 20:9-22:11; see also Document No. 15 ex. C.  Plaintiff says she told various co-workers about Mitchell's conduct but did not complain to her supervisors or other authorities at METRO.  Id. 34:4-24. Plaintiff testified that she did complain to her immediate supervisors regarding Jackson and LaFleur, which complaints she voiced only in meetings to which Plaintiff had been summoned to discuss her own violations of METRO policy and procedures that had been reported by these two Street Service Supervisors.  Id. 8:18-9:3; 17:24-20:2; 40:1-11.

On July 13, 2006, Plaintiff applied for a position as Street Service Supervisor with METRO, was not given the position, and was

---

[2] Jackson's alleged staring occurred during May and June, 2006.  Id. 20:9-22:11.  Mitchell allegedly stared at Plaintiff on eight occasions in 2006.  Id. 31:22-33:9.  The staring at Plaintiff by LaFleur purportedly occurred ten times over a period of four years between 2002 and 2006.  Id. 37:25-38:16.

allegedly given no explanation by METRO officials as to why she was not selected.  Document No. 1 ¶ 14; Document No. 15, <u>Plaintiff's Deposition</u> 70:7-12.  Plaintiff attributes METRO's failure to promote her to the harassment she allegedly sustained by the foregoing "supervisors."  Document No. 1 ¶ 14.  However, the uncontroverted testimony of METRO's Senior Director of Transportation, Tangee Mobley, is that the position was eliminated and never filled after METRO decided to reduce its staff.  Document No. 15 ex. E.

Plaintiff also complains of the conduct of a co-worker, Malcolm Price, a training instructor, who attempted to kiss her on three separate occasions in July or August, 2006.[3]  Document No. 15, <u>Plaintiff's Deposition</u> 53:21-54:16.  Plaintiff mentioned the first of these incidents to a co-worker, months after it occurred, but never reported any of these encounters with Price to her supervisors or other authorities at METRO.  Plaintiff additionally

---

[3] On July 20th, Price approached Plaintiff on the street.  After the two greeted each other, Price purportedly declared, "'You're trying to get away from me.  Come here and let me kiss them lips'."  <u>Id.</u> 55:25-56:6.  When he started to reach for Plaintiff, she told him to stop, commenting "'I don't know what your problem is'."  <u>Id.</u> 56:6-11.

In late July or early August, Price grabbed Plaintiff's face and puckered his lips toward her before Plaintiff pushed him away.  <u>Id.</u> 57:12-58:2.  Sometime later in August, while the two were walking toward a doorway, Price moved his head in the direction of Plaintiff's, and purportedly attempted to kiss Plaintiff on the cheek.  Plaintiff moved her head away and told him to stop.  <u>Id.</u> 58:22-59:17.

4

contends that Price made a sexually explicit comment to her while they were waiting to board an employee shuttle in August, 2006.[4] Plaintiff says she mentioned this last incident to a co-worker, but concedes she did not report it to her supervisor or to any other METRO official.  Id. 63:15-21.

Finally, Plaintiff complains of overhearing sexually explicit dialogue between employees aboard the METRO employee shuttle bus. Id. 67:13-16.  Plaintiff purportedly heard "loud conversations" on a routine basis over the course of her employment, but did not participate in them.  Id. 68:16-69:4.  Again, she never reported or complained to METRO about hearing such language, nor did she ask the employees to refrain from engaging in such dialogue.  Id. 68:13-15, 69:5-7.  Although Plaintiff contends that she was "disturbed" by the acts of Price and others, causing her to suffer depression and stress,[5] she conceded in her deposition that the foregoing incidents did not impair her ability to perform her duties as a bus operator.

---

[4] Price allegedly declared to Plaintiff, "I will stick this tongue inside of you.  You ain't going to want nothing else because I'm good with my tongue."  Id. 63:2-6.

[5] Plaintiff attributes an episode of chest pains she suffered in April, 2007, for which her physician prescribed acid reflux and anti-inflammatory medication, to the cumulative stress caused by the above-named coworkers.  Id. 77:12-25, 80:7-22.  She additionally cited her suspension by METRO due to an alleged lie of another bus operator, Beverly Jordan, as a source of stress that precipitated the onset of chest pains.  Id. 78:1-13.  However, Plaintiff does not rely on Jordan's purported conduct as a basis for her hostile work environment claim.  Id. 104:7-9.

Plaintiff filed a charge with the EEOC and timely filed this suit upon receipt of a notice of right to sue, alleging that the foregoing acts of sexual harassment resulted in a hostile work environment of which METRO knew or should have been aware and failed adequately to remedy.  Defendant now moves for summary judgment, contending, *inter alia*, that (1) Plaintiff cannot establish the alleged same-sex harassment was based on gender; and (2) the challenged conduct was not sufficiently pervasive or severe to support her hostile work environment claim.  Document No. 15 at 9; Document No. 18 at 5-6.

## II.  Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted.  Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for

summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden."  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986).  All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  Id.  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  Anderson, 106 S. Ct. at 2513.

III.   Discussion

A.   Same-Sex Harassment

Defendant contends that the alleged incidents of sexual harassment recited in Plaintiff's deposition cannot as a matter of law sustain a hostile work environment action under Title VII.  "A hostile-work-environment claim consists of five elements: (1) the plaintiff belongs to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action."  Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 325 (5th Cir. 2004).  However, if the alleged harasser possessed supervisory (or successively higher) authority over the plaintiff, the employer's knowledge is presumed.  *See* Faragher v. City of Boca Raton, 118 S. Ct. 2275, 2292-93 (1998); Wyatt v. Hunt Plywood Co., 297 F.3d 405, 411 (5th Cir. 2002).

In this case, Plaintiff and all but one of the alleged harassers are women.  To be actionable under Title VII, the plaintiff must "prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted *discrimination* because of sex."  Oncale v. Sundowner Offshore Servs., Inc., 118 S. Ct. 998, 1002 (1998) (internal quotation marks

8

and ellipses omitted); *see also* La Day v. Catalyst Tech., Inc., 302 F.3d 474, 478 (5th Cir. 2002). When same-sex harassment is alleged, this threshold burden can be satisfied by: (1) demonstrating that the harasser made "explicit or implicit proposals of sexual activity and providing credible evidence that the harasser was homosexual"; (2) showing that the harasser was "motivated by general hostility to the presence of members of the same sex in the workplace"; or (3) offering "direct, comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." La Day, 302 F.3d at 478 (interpreting Oncale); *see also* Russell v. Univ. of Tex. of the Permian Basin, 234 F. App'x 195, 201 (5th Cir. 2007) (unpublished opinion).

Defendant contends that Plaintiff has not satisfied her threshold burden under La Day with respect to any of the alleged female harassers--Cynthia Green, Jessie Hall, Claudia Jackson, Shirley Mitchell, and Melanie LaFleur. Document No. 18 at 5-6. Plaintiff does not assert, nor does she present any evidence pursuant to the second or third evidentiary routes prescribed in La Day, specifically, that any of these persons treated men differently than women, or that they were generally hostile to women in the workplace. Although Plaintiff in her deposition testimony broadly asserted with no specifics that LaFleur had harassed at least 30 other women at METRO, *see* Document No. 15,

9

Plaintiff's Deposition, at 40:25-41:12, this conclusory allegation is not competent summary judgment evidence. *See, e.g.*, Marshall v. E. Carroll Parish Hosp. Serv. Dist., 134 F.3d 319, 324 (5th Cir. 1999) ("It goes without saying that [ ] conclusory, unsupported assertions are insufficient to defeat a motion for summary judgment."). Plaintiff must therefore present credible evidence that these women were homosexual and that they expressly or impliedly solicited sex from Plaintiff, pursuant to the first of the three avenues prescribed in La Day.

Plaintiff, in her Original Complaint, contends that a METRO contract security guard, Jesse Hall, made inappropriate inquiries regarding Plaintiff's sexual preferences and comments regarding her sexual orientation. Though Plaintiff's deposition testimony recounted METRO's swift response to her complaint regarding Hall's conduct, she did not explain the nature of that conduct. Document No. 15, Plaintiff's Deposition at 51:1-52:11. The unsubstantiated assertions in Plaintiff's Original Complaint are insufficient to sustain Plaintiff's summary judgment burden of providing specific evidence of sexual harassment. *Cf*. Wallace v. Tex. Tech Univ., 80 F.3d 1042, 1049-50 (5th Cir. 1996) (rejecting a plaintiff's hostile work environment claim based on alleged racist remarks made by his superior when no record evidence supported that anyone actually made those remarks). Plaintiff additionally fails to provide any evidence, let alone credible evidence, that Hall was homosexual.

Accordingly, Plaintiff has not satisfied her burden under La Day of proving Hall's alleged conduct was discrimination on the basis of sex.

Plaintiff also contends that three Street Service Supervisors, Claudia Jackson, Shirley Mitchell, and Melanie LaFleur, variously stared at her in a "lustful" manner on occasions between 2002 and 2006. "[A]lthough 'following and staring' can betray romantic or sexual attraction, the everyday observation of fellow employees in the workplace is also a natural and unavoidable occurrence when people work together in close quarters or when a supervisor keeps an eye on employees." Mendoza v. Borden, Inc., 195 F.3d 1238, 1248 (11th Cir. 1999) (en banc).  Here, METRO assigned its Street Service Supervisors Jackson, Mitchell, and LaFleur to observe and follow bus operators to ensure their compliance with METRO's policies and procedures.  These supervisors in discharging their own job responsibilities were required to follow bus operators on their routes, including Plaintiff, and to observe them as they performed their duties.  In this workplace context, there is no summary judgment evidence to support Plaintiff's conclusory assertion that the supervisors "stared" at her with any prurient interest.

Specifically, Mitchell purportedly "stalked" Plaintiff's bus, and, in one instance, pulled alongside and told Plaintiff that she was "going to get" her and not to "play her." Document No. 15,

11

Plaintiff's Deposition 35:19-36:20. As explained above, Mitchell's job required her to follow and observe Plaintiff's operation of the bus. Plaintiff's characterization of Mitchell's observing her on the job as "stalking" does not render the incident reasonably susceptible to interpretation as an expression of sexual interest. Furthermore, Mitchell's ambiguous statement, facially devoid of sexual implications and occurring while Mitchell performed her supervisory duties, is not objectively amenable to an interpretation that Mitchell intended "to get" Plaintiff for any sexual gratification, as Plaintiff subjectively believed. At most, Mitchell's comment suggests some disapprobation of Plaintiff's conduct and possibly even hostility of an unknown origin.

With respect to Jackson and LaFleur, Plaintiff likewise relies solely on her own characterization of their "stares" as reflections of sexual desire, when these individuals were charged by METRO to follow all bus drivers on their routes, including Plaintiff, and to observe their conduct. Under these circumstances, their stares, however Plaintiff may have perceived them, cannot reasonably be construed as implied sexual overtures. Furthermore, the reports filed by LaFleur and Jackson against Plaintiff for various infractions, whether justified or not, fall squarely within their supervisory duties, and nothing other than Plaintiff's subjective view of their motives suggests that the exercise of their duties was motivated by sexual interest. In fact, according to

Plaintiff's own testimony, LaFleur purportedly declared that her dislike of Plaintiff stemmed from prior (and inferentially unfavorable) experiences she had had with Plaintiff's cousins, and that, for whatever reason, LaFleur disapproved of Plaintiff's authoring of a book.  Id. at 40:1-14.  Neither of these unrebutted, proffered explanations indicates that LaFleur harbored sexually-based hostility toward Plaintiff.

In sum, Plaintiff presents no probative summary judgment evidence that Mitchell, Jackson, or LaFleur made sexual advances toward her.  In fact, in her EEOC charge Plaintiff admitted that none of these individuals "approached [her] about sex."  Document No. 15 ex. C.  She opined to the EEOC that she merely "believe[d] that the[se] female supervisors may have an attraction to" her. Id.  Plaintiff's subjective "belief" that she might be the object of sexually-based interest by these persons, however sincere, cannot sustain her threshold burden under La Day.  *Cf.* Kreamer v. Henry's Marine, No. Civ. A. 03-3139, 2004 WL 2297459, at *7 (E.D. La. Oct. 7, 2004) (similarly rejecting reliance on subjective belief of a harasser's homosexuality as insufficient to sustain the plaintiff's evidentiary burden prescribed in La Day), *aff'd*, 150 F. App'x 378 (5th Cir. 2005).  Further, apart from Plaintiff's subjective, conclusory beliefs, Plaintiff offers no evidence that Mitchell, Jackson, or LaFleur was homosexual.  Plaintiff has failed to raise a genuine issue of material fact that the actions of

13

Mitchell, Jackson, and LaFleur constituted discrimination on the basis of sex within the meaning of Title VII.

Finally, Plaintiff alleges that co-worker Cynthia Green, back in 2002 during their 8-weeks METRO training sessions, recounted her sexual activities with women, and stared at Plaintiff while making unspecified gestures with her mouth. Green's discussion of her sexual preferences and exploits with women provides some evidence supporting a homosexual orientation. However, the description of her sexual activities was directed at a mixed-gender group, and not specifically at Plaintiff. Under these circumstances, Green's comments cannot reasonably be construed as an express or implied sexual advance to Plaintiff. The fact that Green addressed her vulgar comments to both men and women also indicates that Plaintiff was not exposed to offensive language to which members of the opposite sex were not similarly exposed, such as would be necessary to sustain a Title VII claim. *See, e.g.*, Oncale, 118 S. Ct. at 1002 (explaining that the mere use of words with sexual content does not itself constitute prohibited discrimination; rather, the "critical issue" is whether one gender was exposed to disadvantageous terms or conditions of employment vis-a-vis the other gender).

Furthermore, the implications of Green's staring at Plaintiff while making "gestures with her mouth" of a type not discernible from the record are, at best, ambiguous. While Plaintiff may

14

subjectively have perceived the staring and unspecified gestures as sexual in nature, there is no summary judgment evidence from which a reasonable jury could conclude that this conduct was so tinged with sexual connotations that it could fairly be viewed as an implied sexual overture.  For instance, Plaintiff has not alleged that Green singled out Plaintiff to make sexually-suggestive comments to her, asked Plaintiff out on a date, questioned Plaintiff regarding her sexual preferences, touched or otherwise engaged in inappropriate physical contact with Plaintiff, or engaged in any other conduct from which the Court could reasonably infer that Green was expressly or impliedly proposing sexual activity.  Accordingly, the Court concludes that Plaintiff has not carried her burden under La Day of raising a genuine issue of fact that Green discriminated against her on the basis of sex, and Green's conduct, like that of the other alleged female harassers, is therefore not actionable under Title VII.

B.   Defendant's Knowledge of the Alleged Harassment

Plaintiff's remaining allegations of harassment pertain to four encounters with co-worker Malcolm Price, a METRO training instructor, and the overhearing of sexually-explicit dialogue between co-workers aboard the METRO employee shuttle bus.  It is uncontroverted that these incidents did not involve persons with supervisory or successively higher authority over Plaintiff.

Document No. 15 at 7; Document No. 16 at 4, 7.  When, as here, the alleged harassment involves co-workers, as opposed to supervisors, Plaintiff must proffer summary judgment evidence that METRO "knew or should have known about the harassment and failed to take prompt remedial action."  <u>Woods v. Delta Beverage Group, Inc.</u>, 274 F.3d 295, 298 & n.2 (5th Cir. 2001); *see also* <u>Watts v. Kroger Co.</u>, 170 F.3d 505, 509 & n.3 (5th Cir. 1999)(explaining that respondeat superior applies in co-worker harassment cases only if the employer knew or should have known and failed promptly to act).

    Plaintiff has conceded that, although she informally mentioned two of her encounters with Price to her co-workers, she never reported to METRO officials or management any of Price's conduct toward her and, likewise, never reported or complained to METRO management the offensive language that she overhead on the shuttle bus.  Document No. 15, <u>Plaintiff's Deposition</u> at 56:9-63:21, 64:1-2, 67:13-69:7.  "Harassment laws cannot be effective if incidents are not reported, and 'an employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists.'"  <u>Silk v. City of Chicago</u>, 194 F.3d 788,  807 (7th Cir. 1999) (quoting <u>Shaw v. AutoZone, Inc.</u>, 180 F.3d 806, 813 (7th Cir. 1999)).  Because the uncontroverted summary judgment evidence is that Plaintiff did not report these alleged instances of sexual harassment to METRO, Plaintiff cannot satisfy her *prima facie* burden of showing that METRO failed to remedy

16

harassment by co-workers of which it knew or reasonably should have known.  Accordingly, METRO is entitled to summary judgment on Plaintiff's hostile work environment claim.[6]  *Cf.* <u>Veal v. Schlumberger Tech. Corp.</u>, No. Civ. A. H-04-3550, 2006 WL 2370006, at *12 (S.D. Tex. Jan. 31, 2006) (Atlas, J.) (concluding dismissal of hostile work environment claim was proper for lack of evidence that the plaintiff reported to his employer the alleged harassment by co-workers).  The Court therefore finds it unnecessary to address METRO's additional arguments.

---

[6] Additionally, these alleged instances of co-worker harassment do not involve "patterns or allegations of extensive, longlasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment," as would be necessary to prove the existence of severe or pervasive harassment. <u>Indest v. Freeman Decorating, Inc.</u>, 164 F.3d 258, 264  (5th Cir. 1999).  Although Plaintiff asserts in conclusory fashion that the harassment by "supervisors" resulted in her being denied promotion to Street Service Supervisor, she offers no evidence controverting the affidavit testimony of Defendant's representative, who explains that METRO declined to hire all of the 56 applicants and instead eliminated the position as part of a reduction-in-force.  *See* Document No. 15 ex. E.  Hence, METRO's declination to hire Plaintiff as a Street Service Supervisor provides no support for her hostile work environment claim.

More importantly, even when considered in the aggregate, the relatively isolated incidents involving Price, and vulgar banter between co-workers that Plaintiff merely overheard aboard the bus-- neither of which is alleged to have affected Plaintiff's work performance--simply do not rise to the level of severe or pervasive harassment actionable under Title VII.  *Cf.* <u>Hockman</u>, 407 F.3d at 321, 328-29; <u>Shepherd v. Comptroller of Pub. Accounts</u>, 168 F.3d 871, 872, 874-75 (5th Cir. 1999); <u>Hopkins v. Baltimore Gas & Elec. Co.</u>, 77 F.3d 745, 754 (4th Cir. 1996); <u>Weiss v. Coca-Cola Bottling Co. of Chicago</u>, 990 F.2d 333, 337 (7th Cir. 1993).  Summary judgment to Defendant is therefore appropriate on this alternative ground.

IV.  Order

Accordingly, it is

ORDERED that Defendant Metropolitan Transit Authority of Harris County, Texas's Motion for Summary Judgment (Document No. 15) is GRANTED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 9th day of January, 2008.

*Ewing Werlein, Jr.*
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE